# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ARRAY CACHE TECHNOLOGIES, LLC, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| MEDIATEK INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Array Cache Technologies, LLC ("Array Cache" or "Plaintiff"), by and through its attorneys, files its Complaint against Defendant MediaTek Inc. (hereinafter, "MediaTek" or "Defendant"), and hereby alleges as follows:

## THE PARTIES

1. Array Cache is a limited liability company, organized and existing under the laws of the State of Texas, having a principal place of business at 104 East Houston Street, Suite 140, Marshall, Texas 75670.

2. On information and belief, MediaTek is a corporation operating under the laws of China, with its principal place of business located at No. 1, Dusing 1st Road, Hsinchu Science Park, Hsinchu City 300, Taiwan, and may be served pursuant to the provisions of the Hague Convention. MediaTek is the world's fifth largest global fabless semiconductor company and is a market leader in developing innovative Systems-on-Chip ("SoC") for mobile devices, home entertainment, connectivity and Internet of Things (IoT) products.[1] On information and belief,

---

[1] *See* https://www.mediatek.com/company/discover

MediaTek does business in Texas, directly or through intermediaries, and maintains its principal place of business in Taiwan.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1338.

4. This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant comprises a foreign company that may be sued in any Judicial District, including the Eastern District of Texas.

6. Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, Defendant through its own acts and/or through the acts of others, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one. Further, on information and belief, Defendant has admitted or not contested proper venue in this Judicial District in other patent infringement actions.

## FACTUAL BACKGROUND

7. On May 17, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,334,485 (the "'485 Patent") entitled "System and Method for Dynamic Enforcement of Store Atomicity." A true and correct copy of the '485 Patent is available at: https://patentimages.storage.googleapis.com/da/b5/f2/228107a0f71a82/US11334485.pdf.

8. Array Cache is the sole and exclusive owner of all right, title, and interest to and in the '485 Patent (the "Patent-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. Array Cache also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

9. The '485 Patent generally relates to memory model implementation in out-of-order execution processor architectures. The technology of the Patent-in-Suit was originally developed by Stefanos Kaxiras and Alberto Ros of Eta Scale AB ("Eta Scale"). Some embodiments of the invention provide memory system access ordering and instruction ordering in multiprocessor systems, and thereby provide efficient speculative store atomicity. MediaTek uses this technology, for example, in its implementation of cache coherence in processors and GPUs of the Accused Products.

10. MediaTek has infringed and is continuing to infringe the Patent-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell and/or importing ARM-based SoCs comprising multi-core GPUs and/or processors. On information and belief, all such products implement infringing cache coherence systems with dynamic enforcement of store atomicity, such as the Valhall architecture, and/or CoreLink Cache Coherent Interconnect. The Accused Products include at least all chips comprising Mali-G77 and

later GPUs, *e.g.,* the Dimensity 700 Series, Dimensity 800 Series, Dimensity 900 Series, Dimensity 1000 Series, Dimensity 6000 Series, Dimensity 7000 Series, Dimensity 8000 Series, Dimensity 9000 Series, Kompanio Series, and Pentonic Series (the "Accused Products").

11. For example, on information and belief, the MediaTek Dimensity 7400X, 7300X, and 7020 are sold in the United States and are incorporated by others into products sold into the United States, such as the Motorola Razr (2025), Motorola Razr+ 2024, and Motorola G54 5G, respectively. As another example, on information and belief, the MediaTek Dimensity 9300+ is sold in the United States and incorporated by others into products sold into the United States, such as the Samsung Galaxy Tab S10 Ultra. By way of another example, on information and belief, the MediaTek Dimensity 700 is sold in the United States and incorporated by others into products sold into the United States, such as the T-Mobile Revvl V+ 5G. By way of another example, on information and belief, the MediaTek Dimensity 8300 is sold in the United States and incorporated by others into products sold into the United States, such as the Lenovo Idea Tab Pro. By way of another example, on information and belief, the MediaTek Dimensity MT8183 is sold in the United States and incorporated by others into products sold into the United States, such as the Amazon Fire HD 10.

## COUNT I
### (Infringement of the '485 Patent)

12. Paragraphs 1 through 11 are incorporated by reference as if fully set forth herein.

13. Array Cache has not licensed or otherwise authorized MediaTek to make, use, offer for sale, sell, or import any products that embody the inventions of the '485 Patent.

14. Defendant has and continues to directly infringe the '485 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

4

and every limitation of one or more claims of the '485 Patent. On information and belief, these products include at least the Accused Products, such as those Dimensity Series chips implementing dynamic enforcement of store atomicity in cache coherence for GPU cores.

15. For example, Defendant has and continues to directly infringe at least claim 7 of the '485 Patent by making, using, offering to sell, selling, and/or importing into the United States products that perform a method for dynamic enforcement of store atomicity, the method comprising: executing a given processor core load at a given time and at a given processor core in a plurality of processor cores, the given processor core load associated with a first memory location; receiving data for the given processor core load from an existing processor core store associated with the first memory location and located in a store buffer associated with the given processor core; and assigning a speculative state to a subsequent in program order processor core load executed at one of the processor cores in the plurality of processor cores to prevent the subsequent in program order processor core load from committing before the existing processor core store is performed.

16. The Accused Products comprise a method for dynamic enforcement of store atomicity. For example, the Dimensity 1100 SoC comprises a Mali-G77 GPU based on the Mali Valhall architecture, and implements dynamic enforcement of store atomicity in cache coherence. For example, on information and belief, the GPU utilizes optimized atomic operations and accesses sequential address ranges across threads in a given group of instructions, and utilizes a load/store unit supported by a configurable L1 cache for each shader core, backed by a shared L2 cache.



Source:  https://developer.arm.com/documentation/102203/0100/Valhall-shader-core

17. The Accused Products further perform executing a given processor core load at a given time and at a given processor core in a plurality of processor cores, the given processor core load associated with a first memory location. For example, the GPU of the Dimensity 1100 comprises a plurality of cores, each of which executes a processor load associated when in operation, each load of which is associated with a first memory location (*e.g.*, an address within L1 or L2 cache memory). For example, the GPU of the Dimensity 1100 comprises multiple processing cores capable of executing specific processor core load operations in parallel for a particular address while maintaining cache coherence with a varying unit. For example, the

6

Dimensity 1100 supports instructions, such as LEA_ATTR and LEA_VARY, among other dynamic scheduling of instructions, such that cores execute instructions in parallel while maintaining cache coherence.

> **Load/store unit**
>
> The load/store unit is responsible for all shader memory accesses which are not related to texture samplers. This includes generic pointer-based memory access, buffer access, atomics, and imageLoad() and imageStore() accesses for mutable image data.
>
> Data that is stored in a single 64-byte cache line per clock cycle can be accessed. Warp unit accesses are optimized to reduce unique cache access requests. For example, data can be returned in a single cycle if all threads access data inside the same cache line.
>
> We recommend that you use shader algorithms that exploit the wide data access, and the cross-thread merging functionalities, of the load/store unit.
>
> For example:
> - Use vector loads and stores in each thread.
> - Access sequential address ranges across the threads in a warp
>
> The load/store unit includes 16KB L1 data cache per core, which is backed up by the shared L2 cache.

Source: https://developer.arm.com/documentation/102203/0100/Valhall-shader-core

> **Varyings**
>
> Unlike older Mali designs, the Valhall hardware allocates memory for varyings automatically. The address of the allocated memory is available as LEA_ATTR. It is stored to with standard STORE instructions with the appropriate segment (position or varying).
>
> Valhall supports a black hole address. Writes to any address with the top bit set are discarded without faulting. The canonical black hole address is BH = (1 « 63). Black hole addresses are useful in the construction for point size writes from a position shader:
>
> ```
> address = is_writing_points ? LEA_ATTR(r59 + 4) : (1 « 63)
> STORE.i16.pos @psiz, address
> ```
>
> Point sizes should be clamped to hardware bounds $[\frac{1}{2}, 1024]$.

Source: https://rosenzweig.io/Valhall-Documentation.pdf

> **LEA_VARY**
>
> Load varying effective address.
>
> Loads the effective address of the position buffer (in a position shader) or the varying buffer (in a varying shader). That is, the base pointer plus the vertex's linear ID (the first source) times the buffer's per-vertex stride. LEA_VARY should be executed once in a position/varying shader, with the linear ID preloaded as r59. Each position/varying store can then be constructed as STORE with the base address sourced from the 64-bit destination of LEA_VARY and an appropriately computed offset. Varying stores bypass the usual conversion hardware for attributes; this diverges from earlier Mali hardware.

Source: https://rosenzweig.io/Valhall-Documentation.pdf

18. The Accused Products further perform receiving data for the given processor core load from an existing processor core store associated with the first memory location and located in a store buffer associated with the given processor core. For example, the Mali-G77 GPU of a Dimensity 1100 chip performs receiving data for the given processor core load from an existing processor core store associated with a first memory location (*e.g.*, L1 or L2 cache memory) and located in a store buffer associated with the given processor core, *e.g.* when the processor core fetches the most recent data from the store buffer after instructions associated with the processor core store are performed.



Source: https://developer.arm.com/documentation/102203/0100/Fourth-generation-Mali-GPU-architecture

19. For example, the Accused Products perform assigning a speculative state to a subsequent in program order processor core load executed at one of the processor cores in the plurality of processor cores to prevent the subsequent in program order processor core load from committing before the existing processor core store is performed. For example, on information and belief, the Mali-G77 GPU of a Dimensity 1100 chip assigns a speculative state to a subsequent program order processor core load (*e.g.*, in the context of accessing sequential addressing across threads using dynamic scheduling and varying unit instructions) executed at one of the processor cores (*e.g.*, a core of the GPU) from committing before the existing processor core store is performed (*e.g.*, when executing new instructions while prior high latency instructions are still in flight).

> **Dependencies**
>
> Valhall executes new instructions while prior high-latency instructions are still in flight. This allows the architecture to hide the latency of memory accesses, by issuing multiple memory accesses together or executing unrelated arithmetic while the results are pending. When the results of a memory access are required, the compiler must explicitly wait on the previous instruction, inserting a dependency.
>
> Recall on Bifrost, every clause is assigned one of eight "dependency slots", and every clause can wait on any subset of these slots. Rather than specifying in every instruction, Bifrost specifies this information in the clause header, as a compromise between precision and code size.
>
> Valhall has no clauses (and hence no clause headers), so it must specify this information in the instructions themselves. This becomes practical by making two simplifications to Bifrost:
>
> First, general instructions only need to specify the dependencies. Arithmetic instructions do not need a dependency slot assigned. The few instructions that *do* need dependency slots can specify their slot in another part of the instruction.
>
> Second, Valhall uses only 4 slots instead of 8, saving 4-bits for every instruction. This simplication is practical, as the performance gain from adding extra slots levels off quickly.
>
> Obscurely, instructions that store to memory also require dependency slots assigned. Waiting on these slots allows subgroup memory barriers to be implemented inexpensively.

Source: https://rosenzweig.io/Valhall-Documentation.pdf

20. Defendant has and continues to indirectly infringe one or more claims of the '485 Patent by knowingly and intentionally inducing others, including MediaTek customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the MediaTek Dimensity 1100.

21. Defendant, with knowledge that these products, or the use thereof, infringe the '485 Patent since at least 2019 but by no later than the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '485 Patent by providing these products to customers and/or distributors for use in an infringing manner in the United States including, but not limited to, products that include infringing technology, such as the MediaTek Dimensity series chips. For example, MediaTek's instruction manuals, websites, promotional materials, advertisements, and other information demonstrate to

others, including customers, prospective customers, and distributors, how to use the Accused Products in an infringing manner. On information and belief, MediaTek is aware that the normal and customary use of the Accused Products by customers, distributors, and others would infringe the '485 Patent.

22. Defendant further indirectly infringes one or more claims of the '485 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '485 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '485 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '485 Patent. Defendant performs these affirmative acts with knowledge of the '485 Patent and with intent, or willful blindness, that they cause the direct infringement of the '485 Patent.

23. Defendant has induced infringement by others, including customers and distributors, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '485 Patent, but while remaining willfully blind to the infringement.

24. MediaTek has willfully infringed, and continues to willfully infringe, the '485 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while

knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, on information and belief, MediaTek has known of Array Cache's patents, including the '485 Patent.

25. Array Cache has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '485 Patent in an amount to be proved at trial.

26. Array Cache has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '485 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Array Cache prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patent-in-Suit;

b. Entry of judgment declaring that MediaTek's infringement of the Patent-in-Suit is willful;

c. Entry of a preliminary injunction enjoining MediaTek from making, using, importing, offering to sell, and/or selling the Accused Products;

d. Entry of a permanent injunction enjoining MediaTek from making, using, importing, offering to sell, and/or selling the Accused Products;

e. An order awarding damages sufficient to compensate Array Cache for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

    f.    Entry of judgment declaring that this case is exceptional and awarding Array Cache its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

    g.    An accounting for acts of infringement;

    h.    Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

    i.    Such other and further relief as the Court deems just and proper.

Dated: June 30, 2025

Respectfully submitted,

*/s/ Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Jacob Ostling
NY Bar No. 5684824
Email: jostling@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

**ATTORNEYS FOR PLAINTIFF ARRAY CACHE TECHNOLOGIES, LLC**